IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL PRICE,                          §
                                        §
                 Plaintiff,             §        Civil Action No. 3:12-CV-2642-D
                                        §
VS.                                     §
                                        §
AMERICA'S SERVICING COMPANY             §
AS SERVICING AGENT FOR US               §
BANK, N.A., AS TRUSTEE FOR              §
CREDIT SUISSE FIRST BOSTON              §
MORTGAGE SECURITIES CORP.,              §
HOME EQUITY ASSET TRUST                 §
2003-07,                                §
                                        §
                 Defendant.             §

MEMORANDUM OPINION
AND ORDER

In this adversary proceeding withdrawn from the bankruptcy court, the plaintiff-debtor

alleges that the defendant-creditor violated multiple bankruptcy procedures and substantive

guaranties by seeking funds to which it is not entitled.  The defendant-creditor moves under

Fed. R. Civ. P. 8(a) and 12(b)(6) to dismiss some of the plaintiff-debtor's claims.  For the

reasons that follow, the court grants the motion but grants the plaintiff-debtor leave to amend.

I

Plaintiff-debtor Michael Price ("Price") filed for chapter 13 protection in 2006,

triggering the automatic stay.  Defendant-creditor America's Servicing Company, as

servicing agent for U.S. Bank, N.A., as trustee for Credit Suisse First Boston Mortgage

Securities Corporation, Home Equity Asset Trust 2003-07 ("ASC"), moved for relief from

the automatic stay, and it received approval for $675.00 in attorneys fees through an agreed order resolving the motion. Price received a discharge in July 2011.

Price filed a second chapter 13 petition in December 2011 in response to his receipt of a notice of foreclosure from ASC. ASC filed a proof of claim in May 2012. Price alleges that this proof of claim lists attorney's fees, title costs, appraisal/broker's price opinion fees, property fees, and inspection fees for which ASC did not seek court approval, and that were charged and paid in the first bankruptcy case by the chapter 13 trustee. Price avers that the proof of claim lists an escrow shortage of $11,582.74, which is incorrect because it involves duplicate payments to insurers, and does not reflect payments from the trustee that ASC should have applied to his account.

Price brought the instant adversary proceeding in bankruptcy court, and the reference was later withdrawn. He alleges six claims: "contempt for willful violation of the discharge order," "objection to claim 11 U.S.C. § 502," "breach of contract," "negligent servicing," "fraud/misrepresentation," and "financial related damages/attorney's fees and costs." Within his complaint are numerous references to other provisions that he alleges ASC violated. He asserts in the introduction that ASC violated 11 U.S.C. §§ 362, 330, 1327, and 1328, Fed. R. Bankr. P. 2016(a), the Real Estate Settlement Procedures Act ("RESPA"), and the Dodd-Frank Act. The remainder of the complaint, however, fails to mention any of these provisions except §§ 362 and 1327. The second reference to § 1327, a statute that provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor," is under the heading "fraud or misrepresentation." The second reference to § 362 is in a second laundry

- 2 -

list of provisions that ASC allegedly violated, and is included in the jurisdiction and venue section of the complaint.  Further, the second laundry list states for the first time that Price alleges violations of §§ 506 and 524.  But § 506 is not mentioned elsewhere in the complaint, and § 524 is cited again only in the facts section of the complaint.

ASC moves to dismiss Price's claims for contempt, breach of contract, negligent servicing, and fraud/misrepresentation, as well as any claims stemming from his passing references to bankruptcy statutes and rules.  In contrast to his complaint, Price's response to the motion to dismiss largely abandons the structure of the six claims and instead argues that he has stated claims for relief based on the provisions mentioned only cursorily in the complaint.  In doing so, Price fails to defend his claims for fraud or misrepresentation and negligent servicing.  He instead appears to recast his response as an amended complaint. Price contends that he has stated the following claims against ASC: a § 506(b) claim for attempting to recover in its proof of claim certain fees that are not allowed under § 506(b); a § 2016(a) claim for not following appropriate procedural steps to request these fees; a claim that ASC's request for fees in its proof of claim was unreasonable as a matter of state law; contempt for violating the § 524 discharge order; violation of § 362 automatic stay; contempt for violating § 1327 by breaching the provisions of the confirmation order; and breach of the deed of trust and promissory note underlying Price's mortgage.

In addition to its motion to dismiss, ASC moves the court to withdraw the reference to the bankruptcy court.  On the bankruptcy judge's recommendation, the court has withdrawn the reference in its entirety.  The court therefore has before it for decision ASC's

motion to dismiss.

## II

To survive ASC's motion, Price's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570.[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[1] In opposition to ASC's motion, Price mistakenly relies on the obsolete "no set of facts" pleading standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See* P. Br. 3.

III

The court first considers Price's contempt claim, which is based on an alleged violation of the § 524 discharge order issued in his first bankruptcy.

Price alleges that ASC should be held in contempt for violating the discharge order, which operates as an injunction, by requesting in its proof of claim fees that were not properly disclosed or requested, or were already paid.  ASC moves to dismiss this claim on the ground that contempt is properly raised by motion in the bankruptcy court, and not through a complaint in an adversary proceeding, and that Price has not specifically pleaded language from the discharge order that it allegedly violated.

To place this and subsequent parts of this memorandum opinion and order in context, the court begins by noting that, despite an absence of Fifth Circuit authority, both parties appear to recognize that all federal courts of appeals to address the issue have held that § 524 does not create a private right of action; the proper remedy for a § 524 violation is contempt. *See, e.g., Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 508-09 (9th Cir. 2002); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *see also Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001) (holding that "a suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2)," but not addressing the question of private rights of action).[2]  The touchstone for determining whether there is an implied

_____

[2]Two bankruptcy courts in Texas have concluded that Fifth Circuit precedent compels the conclusion that § 524 creates a private right of action, or at least that § 105 creates a right of action other than for contempt.  *See In re Garcia*, 2013 WL 414177, at *3 (Bankr. W.D. Tex. Feb. 1, 2013); *In re Cano*, 410 B.R. 506, 543 (Bankr. S.D. Tex. 2009).  Both decisions

private right of action is Congressional intent, which is best determined by the text of the provision at issue. *Alexander v. Sandoval*, 532 U.S. 275, 1519-20 (2001).  The text of § 524 does not include language indicating that Congress intended to create a private right of action.  This absence is particularly persuasive since Congress amended the Bankruptcy Code to add a private right of action to § 362 enabling debtors to sue for violations of the automatic stay.  *See Pertuso*, 233 F.3d at 422.  If Congress had intended to create a private right of action, it knew how to do so.  Furthermore, § 524(a)(2) states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  Because "[t]he obvious purpose [of § 524] is to enjoin the proscribed conduct—and the traditional remedy for violation of an injunction lies in contempt proceeding," *Pertuso*, 233 F.3d at 421, Congress must not have intended for § 524 to be enforceable through a private right of action, as opposed to a

_____

rely on a footnote from *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008), which reads in its entirety:

> Our discussion is limited to whether Countrywide's conduct in this case constitutes a violation of the automatic stay under Section 362.  Of course, the bankruptcy court has other mechanisms to impose sanctions on parties who may attempt to abuse the procedural mechanisms within the bankruptcy court. *See* 11 U.S.C. § 105; Fed. R. Bankr. P. 9011.

*Campbell*, 545 F.3d at 356 n.1.  Not only does this footnote not imply that § 524 creates a private right of action or that § 105 supplies such an action, it is questionable whether the Fifth Circuit would decide such an issue in a footnote.

contempt proceeding.  Indeed, the Fifth Circuit has described "[t]he discharge injunction granted by section 524(a) [as] a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt."  *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997).

Several circuits have also concluded that § 105(a) does not provide the private right of action absent from § 524.  Section 105(a) addresses the power of bankruptcy courts, stating:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section, while expansive, is not limitless.  "[T]he 'equitable powers [of] bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.'"  *In re Jacobsen*, 609 F.3d 647, 661 (5th Cir. 2010) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).  "'Section 105(a) does not permit courts to act as roving commissions to do equity.'"  *Id.* at 662 (quoting *In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir. 2006)).  If the court were to read § 105 as creating a cause of action other than via civil contempt to remedy violations of § 524, it would be acting as a legislature.  "[I]t is not up to [the court] to read other remedies into the carefully articulated set of rights and remedies set out in the bankruptcy code."  *Walls*, 276 F.3d at 507.  Section 105 authorizes a court to issue orders or judgments necessary to carry out the provisions of the Bankruptcy Code, but the

Code already includes congressionally-prescribed remedies.  *See Pertuso*, 233 F.3d at 423

("[W]e do not read § 105 as conferring on courts such broad remedial powers.  The

'provisions of this title' simply denote a set of remedies fixed by Congress.  A court cannot

legislate to add to them." (quoting *Kelvin v. Avon Printing Co.*, 1995 WL 734481, at *4 (6th

Cir. 1995) (unpublished))).  For this reason, the majority of courts have concluded that § 105

does not provide an alternative to contempt to remedy violations of § 524.[3]

This background explains why Price brought his claim as a contempt claim.  The

question presented here, however, is whether Price's contempt claim is presented properly.

The Ninth Circuit recently held that a contempt claim in bankruptcy cannot be brought as an

adversary proceeding because the Federal Rules of Bankruptcy Procedure make clear that

civil contempt is a contested matter.  *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186,

1189-91 (9th Cir. 2011).  According to Rule 9020, a motion for contempt is governed by

Rule 9014, and Rule 9014 governs contested matters.  "In other words, a contempt

proceeding by . . . a party in interest in bankruptcy is a contested matter." *Barrientos*, 633

F.3d at 1189.  Notably, a civil contempt proceeding is not included in Rule 7001's list of

adversary proceedings.  *See* Rule 7001; *see also Barrientos*, 633 F.3d at 1190 (addressing

---

[3]Some courts read *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st Cir.
2000), to hold that § 105 can provide an independent remedy.  *See, e.g., Pertuso*, 233 F.3d
at 423 n.1; *Garcia*, 2013 WL 414177, at *3.  The court disagrees with these cases, and
instead concurs with *In re Joubert*, 411 F.3d 452 (3d Cir. 2005).  In *Joubert* the Third Circuit
stated that "*Bessette* was an appeal from a district court sitting in bankruptcy, and we view
*Bessette*'s holding simply to be that § 105(a) contempt proceedings grounded in § 524 do not
have to be brought in the same court that issued the original discharge order." *Id.* at 456 n.3.
*See also Walls*, 276 F.3d at 506-07 (similarly interpreting *Bessette*).

why contempt proceeding is not proceeding to obtain injunction or other equitable relief under Rule 7001(7)).   At least one court has concluded that a civil contempt action prosecuted as an adversary proceeding is not problematic.  *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d at 445-46.  But *Bessette* does not appear to have contemplated the procedural argument later advanced by *Barrientos* and now adopted by this court.

Because Price's civil contempt claim was brought as an adversary proceeding, the court dismisses the claim, without prejudice to its being asserted as a contested matter.

IV

The court next addresses Price's claim that ASC violated § 506(b) by requesting certain fees in its proof of claim.

"Section 506(b) authorizes oversecured creditors to recover interest and reasonable fees and expenses that accrue between the petition date and plan confirmation.   An undersecured creditor may not recover its post-petition, pre-confirmation fees and expenses." *In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007) (citing *In re Nair*, 320 B.R. 119, 126 (Bankr. S.D. Tex. 2004)).  Price alleges that ASC is an undersecured creditor and that the fees listed in the proof of claim were incurred after the petition in the first bankruptcy proceeding, but before confirmation in that proceeding, and that ASC was fully paid under the completed plan of the first bankruptcy.  ASC argues that this claim should be dismissed because, *inter alia*, § 506(b) does not provide a private right of action.

The court holds that § 506(b) does not provide a private right of action, and an independent action to remedy alleged violations of § 506(b) cannot be based on § 105(a).

In so holding, the court agrees with *In re Joubert*, 411 F.3d 452 (3d Cir. 2005), which held that § 506(b) does not provide a private right of action for the same reason that § 524 does not. After discussing *Walls* and *Pertuso*, the *Joubert* panel stated that it "agree[s] with the reasoning of these cases, and see[s] no reason why the rule should be different for actions asserted under § 506(b) rather than § 524." *Joubert*, 411 F.3d at 456. As discussed *supra* in § III, the crucial reasoning in the § 524 cases is that Congress must not have intended a separate cause of action because neither § 524 nor § 105 expressly creates a right of action despite Congress' knowing how to do so, and because there is a separate method by which to remedy a § 524 violation. *Walls*, 276 F.3d at 507; *Pertuso*, 233 F.3d at 422. Similarly, § 506(b) does not expressly create a right of action, and the debtor can remedy violations of this provision by objecting to the creditor's proof of claim. *See In re Padilla*, 389 B.R. 409, 428 (Bankr. E.D. Pa. 2008) ("[T]o the extent that a creditor asserts a claim that is inconsistent with § 506(b), Congress has provided a remedy in the Code in the form of an objection to the creditor's proof of claim, just as the contempt remedy exists to enforce the § 524 discharge injunction."). This court agrees with *Joubert* that the reasoning in *Walls* and *Pertuso* is persuasive and applies to § 506(b). Creating a new remedy through either § 506(b) or § 105 for violations of § 506(b) would usurp Congress' legislative role.

The court therefore dismisses Price's § 506(b) claim.

V

Price alleges in his response that ASC violated Rule 2016(a) by seeking fees in its proof of claim that should have been assessed during the first bankruptcy or that were already

paid during the first bankruptcy.  The complaint mentions Rule 2016 twice, but does not provide details regarding how ASC violated this provision.  ASC moves to dismiss this claim on the grounds that it is improperly pleaded, does not state a cause of action because Rule 2016 is a procedural rule rather than a substantive rule, and does not apply to ASC as a creditor outside the estate.

The court dismisses Price's claim under Rule 2016 because Price has not adequately pleaded the violation in his complaint.  The complaint refers twice to Rule 2016: once in the introductory paragraph in a laundry list of purported violations, and again in a second laundry list of purported violations that is included in the jurisdiction and venue section.  The remainder of the complaint fails to allege how ASC violated Rule 2016.  In fact, despite listing six separate claims, the complaint neither lists nor even mentions Rule 2016 in any of these causes of action.[4]  "A federal litigant cannot simply recite in her Complaint every statute or common-law claim she can think of, and leave it to the opposing party and the courts to figure out months or years down the road what nexus (if any) those bare labels have to the facts and circumstances of the case."  *Ford v. Cent. Loan Admin*., 2011 WL 4702912, at *8 (S.D. Ala. Oct. 5, 2011).  Accordingly, Price has failed to plead a "short and plain

---

[4]In this way, Price's complaint differs from a pleading practice called "shotgun pleading," although it is functionally similar.  "Shotgun pleading" occurs when a pleading "sets forth an excessive number of facts, and then adopts them in conclusory fashion to a number of legal claims, with the result that each claim includes facts that are not material to that claim."  *Jones v. Herlin*, 2013 WL 823420, at *3 (W.D. La. Mar. 6, 2013) (citing *Martin v. Tesoro Corp.*, 2012 WL 1866841 (W.D. La. May 21, 2012)).  Here, Price fails even to allege Rule 2016 as a separate cause of action and to incorporate the factual claims in the complaint to support this cause of action.

statement of the claim showing that [it] is entitled to relief[.]"  Rule 8(a).  He has merely

stated a legal conclusion that ASC violated Rule 2016.  The claim is therefore dismissed.[5]

## VI

To the extent that fees requested in the proof of claim are considered post-

confirmation fees of the first bankruptcy rather than pre-confirmation fees in the second

bankruptcy, Price's response also argues that the fees are unreasonable as a matter of state

law.  The court understands this to be a stand-alone claim.  ASC does not respond to this

argument.  Nevertheless, the court dismisses this claim *sua sponte* for failing to plead

entitlement to relief in the complaint.[6]

The complaint nowhere alleges that these fees are unreasonable as a matter of state

law.  Many of the allegations that support Price's claim as dictated in his response are

contained in the complaint's fact section or are alluded to under the heading of Price's second

claim to relief, "Objection to Claim 11 U.S.C. § 502."  But whether the complaint contains

sufficient "factual content [for] the court to draw the reasonable inference that the defendant

---

[5]The court need not address whether Price's claim, as formulated in his response to the motion to dismiss, states a claim on which relief can be granted.  "When a claim is raised for the first time in response to a motion to dismiss or motion for summary judgment, the court should construe that claim as a motion to amend the complaint."  *Graves v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 2119189, at *4 (N.D. Tex. May 27, 2011) (Robinson, J.).

[6]Because the court is allowing Price to replead, the procedure employed here is fair and is therefore permissible.  *See, e.g.*, *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting plaintiffs leave to replead).

is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, when viewed through the lens of the response, it is the *complaint* that must include a "statement of the claim," Rule 8(a). Even under the notice pleading standard, Price's complaint must "give the defendant fair notice of what the claim is," and not simply "the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Without any reference to unreasonableness as a matter of state law, Price has failed to meet this standard, and the court therefore dismisses this claim.

VII

Price's response brief further alleges a violation of the automatic stay under § 362. Price maintains that ASC violated the automatic stay by charging him unreasonable fees and costs when it assessed property insurance fees in the amount of $8,959.42 in less than one year. He argues that, because his house is worth only $72,000, he "can only assume that ASC is assessing these charges over multiple years, and/or ASC miscalculated the escrow account, and/or ASC misapplied the payments it received from the Chapter 13 Trustee during the First Bankruptcy." P. Br. 13. ASC responds that this claim is not pleaded in the complaint, but that, even if the court relies on the allegations in the response, Price has not stated a claim because he has failed to allege that ASC took any act to collect property of the estate when a stay was in place.

Price is again relying on a claim that is not properly pleaded in his complaint. As he did with Rule 2016, Price makes a conclusory reference to § 362, and only as part of a laundry list of provisions that ASC allegedly violated. The complaint does not otherwise mention any violation of the automatic stay, even though it alleges that ASC charged

property fees during the pendency of Price's previous bankruptcy, which is the core factual allegation contained in Price's response.  Thus, just as the court dismissed Price's claim that charging certain fees was unreasonable as a matter of state law because the complaint did not give ASC fair notice of the claim, the court dismisses Price's claim that ASC violated the automatic stay.

## VIII

The court next considers Price's claim that ASC violated § 1327 by misapplying payments obtained from the trustee.

## A

Section 1327 states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  Price alleges that ASC was required by the confirmation order from the first bankruptcy to apply trustee payments to Price's mortgage arrears, which it did not do, as evidenced by the large escrow shortage that occurred only months after the first bankruptcy discharge.  He also avers that ASC has asserted claims on the estate that should have been asserted during the first bankruptcy (or were paid in the first bankruptcy).  ASC responds that Price's claim is not a § 1327 cause of action, but rather is a claim for contempt predicated on a violation of § 1327. It then argues that Price has failed to state a claim on which relief can be granted because he has not pleaded the specific language in the confirmation order that ASC allegedly violated.

B

The court treats Price's claim as one for contempt rather than as a claim under § 1327. This is because the complaint does not make clear what cause of action Price relies on, the Fifth Circuit has not decided whether § 1327 supplies a cause of action and at least one circuit has found that it does not, *see In re Harchar*, 694 F.3d 639, 644-45 (6th Cir. 2012), ASC understands Price's claim to be a contempt claim and therefore does not move to dismiss Price's § 1327 on the ground that there is no private right of action, and Price will have the opportunity to replead this claim based on a private right of action theory if he has a basis to do so.

Price has nevertheless failed to state a claim on which relief can be granted because the complaint does not specify how ASC violated the confirmation order. The remedy of contempt is only available when a party violates a "definite and specific order requiring [the party] to perform or refrain from performing a particular act or acts." *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (citation omitted). But Price's complaint alleges only conclusions. Under the heading "fraud/misrepresentation," Price asserts that "[t]he actions of the Defendant in charging improper and unauthorized fees; failing to properly apply mortgage payments; and, charging post-petition legal fees and expenses to Plaintiff's mortgage loan account, without Court approval constitute willful and intentional violations of the provisions of 11 U.S.C. § 1327(a)." Compl. ¶ 55. The complaint does not specify what provisions of the confirmation order these actions violated. Although Price's response brief includes more specificity—for example, stating that the confirmation

order in the first bankruptcy case required trustee payments to be applied to Price's mortgage arrears—the court does not consider these factual allegations because they are not set out in the complaint. Accordingly, Price has failed to state a claim on which relief can be granted, and the court dismisses this claim.

IX

For many of the same reasons that the court dismisses Price's § 1327(a) claim, it also dismisses his breach of contract claim. A breach of contract claim under Texas law requires proof of multiple elements, including the defendant's breach of the contract. *See, e.g., Mesa v. Verizon Bus. Network Servs., Inc.*, 2012 WL 3452696, at *12 (N.D. Tex. Aug. 14, 2012) (Fitzwater, C.J.) (citing *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied)). But Price's breach of contract claim includes only conclusory statements. It lists ASC's actions that allegedly breached the terms of the promissory note and deed of trust without stating the provisions of either that were violated. This is insufficient to state a plausible claim. *See Twombly*, 550 U.S. at 555 (holding that Rule 8(a) demands more than "labels and conclusions"). The court therefore dismisses Price's breach of contract claim.[7]

---

[7]Price's response provides somewhat more detail about the contractual provisions that it alleges ASC violated, and ASC's reply argues that these additional allegations still fail to state a claim. The court need not address whether the allegations of Price's response would be sufficient if contained in his complaint. If Price repleads, he may be able to address these deficiencies in the amended complaint.

X

The court next addresses Price's claim for negligent servicing. Price alleges that ASC breached its duty of ordinary and reasonable care with regard to the servicing of his mortgage, and that this negligence caused him harm. ASC moves to dismiss on the ground that "negligent servicing" is not a cause of action, and that ASC owed no tort duty to Price. Price has not responded in this respect.

Although there is no Texas cause of action for "negligent servicing" as such, the court reads Price's complaint to assert a negligence claim, but in the specific context of a servicing relationship. Under Texas law, the "elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Price has failed to allege a plausible legal duty. Texas law is clear that there is no special relationship between a mortgagee and a mortgagor that gives rise to a duty of care. *See Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (Kinkeade, J.) (citing *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. 2005, pet. denied)). Further, even if ASC had agreed to a duty of care in servicing Price's loan through a contract between the parties, such a duty would sound only in contract, not in tort. *See UMLIC*, 176 S.W.3d at 612 ("[A]bsent a 'special relationship,' any duty to act in good faith is contractual in nature and its breach does not amount to an independent tort." (citing *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993, writ dism'd w.o.j.)). The court therefore dismisses Price's negligent servicing claim.

- 17 -

XI

The court finally addresses Price's claim for fraud/misrepresentation.  The elements

of common law fraud in Texas are

> (1) a material representation was made; (2) it was false when
> made; (3) the speaker either knew it was false, or made it
> without knowledge of its truth; (4) the speaker made it with the
> intent that it should be acted upon; (5) the party acted in
> reliance; and (6) the party was injured as a result.

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law)

(citations omitted).  Price has alleged nothing more than that "Defendant misrepresented

material information to Plaintiff."  Compl. ¶ 54.  The remainder of the allegations under the

fraud cause of action heading address alleged violations of 11 U.S.C. § 1327(a) rather than

fraud or misrepresentation.  Without plausible allegations as to any of the elements of fraud,

Price has failed to state a claim under the pleading standard of Rule 8, much less the

heightened pleading standard applicable to fraud claims under Rule 9.[8]

XII

Although the court is dismissing certain of Price's claims, it will permit him to

replead.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading

deficiencies before dismissing a case, unless it is clear that the defects are incurable or the

plaintiffs advise the court that they are unwilling or unable to amend in a manner that will

avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D.

---

[8]Price has not specifically responded to ASC's motion to dismiss the
fraud/misrepresentation claim.

- 18 -

Tex. 2005) (Fitzwater, J.) (internal quotation marks and citation omitted).   The court therefore grants Price 30 days from the date this memorandum opinion and order is filed to file an amended complaint.   Although some of the defects the court has identified appear to be incurable, the court will permit Price to replead his entire complaint, if he has grounds to do so, to ensure that he has been given a fair opportunity to avoid dismissal of claims based on pleading deficiencies alone.   Moreover, allowing Price to amend his complaint will ensure that the court has employed a fair procedure in raising certain grounds for dismissal *sua sponte*.

                                        *     *     *

        For the reasons explained, ASC's partial motion to dismiss is granted, and Price is granted leave to amend.

        **SO ORDERED.**

        May 9, 2013.


                                        _____
                                        SIDNEY A. FITZWATER
                                        CHIEF JUDGE

- 19 -